STATE OF NEBRASKA, PLAINTIFF IN ERROR, V. CHARLES
HUTTER, DEFENDANT IN ERROR.

18 N. W. 2d 203

FILED MARCH 30, 1945.  No. 31916.

*Walter R. Johnson,* Attorney General, *H. Emerson Kokjer, Rush C. Clarke* and *John H. Comstock,* for plaintiff in error.

*George B. Hastings, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

CARTER, J.

This is a proceeding under sections 29-2314 and 29-2315, R. S. 1943, by the attorney general to secure a review of the proceedings had upon a plea in bar filed by the defendant in a murder case. This court previously sustained the attorney general's application and allowed the bill of exceptions to be filed. The case is now before us for review on the attorney general's exceptions. A brief history of the case is necessary to a proper understanding of the questions herein involved.

On March 24, 1944, the county attorney for Douglas county filed an information charging that on or about the 5th day of December, 1943, Charles Hutter, unlawfully, feloniously, purposely and of his deliberate and premeditated malice shot Grant Fallon with a pistol, and as a result thereof he died December 5, 1943, and that defendant thus committed murder in the first degree. The case came on for trial and at the conclusion of the state's evidence in chief the defendant moved the court to either dismiss the action or to reduce the charge stated in the information for the

reason that the evidence was insufficient to sustain a conviction of murder in the first degree, murder in the second degree, or manslaughter, or either of them. The ruling on this motion was reserved until the evidence was all in and both parties had rested, at which time it was renewed. The trial court then sustained the motion as to murder in the first degree and murder in the second degree, and overruled it as to manslaughter. The trial court's order states: "Thereupon defendant moving the court to dismiss the charge herein as to murder in the first degree, as to murder in the second degree and also as to manslaughter, upon consideration whereof and being fully advised in the premises it is ordered by the court that said motion be and hereby is sustained as to the charge of murder in the first degree and as to the charge of murder in the second degree and overruled as to the charge of manslaughter." The trial court, in submitting the question whether defendant had committed the crime of manslaughter, instructed the jury that the court had dismissed the charges of murder in the first degree and murder in the second degree. The jury was unable to agree upon a verdict and was discharged on or about May 21, 1944.

The matter came on again to be heard on July 11, 1944, at which time the defendant filed a plea in bar in which he urged that he could not be again tried for murder in the first degree, murder in the second degree and manslaughter, or either of them, for the reason that it would be violative of section 12 of art. I, Nebraska Constitution, protecting against double jeopardy; that it would be violative of section 3 of art I, Nebraska Constitution, guaranteeing due process; and that it would violate section 1 of the Fourteenth Amendment to the Constitution of the United States, insuring due process of law and the equal protection of the laws. Previous acquittal and former jeopardy were also pleaded as a bar to a second trial. The trial court sustained the plea in bar in so far as the information included charges of first and second degree murder and overruled the plea as to the charge of manslaughter and ordered the defendant

tried on that charge. It is the rulings of the trial court on the plea in bar which are before us for review.

It might be well to state that the defendant was subsequently tried on the charge of manslaughter and acquitted. The ruling on the attorney general's exceptions present important questions of law which should be decided for guidance in future cases, but can in no way effect the judgment of acquittal rendered in the action. R. S. 1943, sec. 29-2316. Nevertheless, the statute is a beneficent one. This court is the final adjudicator of questions of criminal law and procedure, yet trial courts are continually deciding such questions from which the defendant does not appeal. The result is that such rulings lack uniformity throughout the various judicial districts of the state. And ofttimes criminals escape conviction through incorrect rulings of the trial court. All this can but tend to demoralize our criminal system. The statute in question affords the means of securing uniformly correct rulings on similar propositions in future cases and in so doing adds stability and confidence to our criminal procedure.

The precise questions raised have never previously been decided by this court. The defendant in error poses the questions to be decided as follows: 1. Was the order entered during the first trial sustaining the motion for a directed verdict and dismissing the charges of murder in the first degree and murder in the second degree, a final judgment operating as an acquittal or discharge of the defendant as to those charges? 2. Did the trial and trial proceedings place the defendant in jeopardy as to murder in the first and second degrees, although the jury disagreed on the issue of manslaughter and was discharged with the consent of the defendant? 3. Did the trial judge in the second trial rule correctly in sustaining the plea in bar as to murder in the first degree and murder in the second degree? We propose to dispose of the case by answering the foregoing questions.

An historical approach seems necessary to secure an adequate discussion of the subject. There were no degrees of murder or manslaughter at common law. All criminal

homicide was either murder or manslaughter, but the latter was included in the former as a constituent element thereof, or it might exist as a distinct offense where there was no malice aforethought. At common law, murder is the unlawful killing of a person with malice aforethought, either express or implied, and manslaughter is the unlawful killing of another without malice express or implied. Manslaughter differs from murder in the want of malice, a condition of the blood or mind at the time of the act. This distinction is the only one that the accumulated wisdom of the common law deemed it advisable to make. "In dividing the crime of murder into two degrees the legislature recognized the fact that some murders, comprehended within the same general definition, are of a less cruel and aggravated character than others, and deserving of less punishment. It did not attempt to define the crime of murder anew, but only to draw certain lines of distinction by reference to which the jury might determine, in a particular case, whether the crime deserved the extreme penalty of the law or a less severe punishment. * * * After the act of 1856, which divided the crime into murder of the first and second degrees, *murder* remained, and it still remains, the unlawful killing of a human being with malice aforethought. * * * The fact that a severer penalty is to be imposed in one case than the other, does not change the effect of a previous conviction, and the defendant who, on his own motion, secures a new trial, subjects himself to a retrial on the charge of murder, whether the first verdict was guilty of murder of the first or of the second degree. At the second trial he may, if the evidence justify such verdict, be found guilty of murder of the first degree." *People v. Keefer*, 65 Cal. 232, 3 Pac. 818, quoted and approved in *Bohanan v. State*, 18 Neb. 57, 24 N. W. 390.

The different degrees of homicide as defined by our statute are all carved out of murder and manslaughter as known to the common law. No new offense has been created, and no homicide which was not criminal at common law is made so by statute, but it is divided into degrees and the punish-

ment graded to meet the circumstances of the particular case. The decisions of this court clearly hold to this view. In *Baldwin v. State*, 12 Neb. 61, 10 N. W. 463, after stating that in a trial for murder the jury, after finding the defendant guilty, shall ascertain whether it be murder in the first or second degree or manslaughter said: "There is but one offense charged in the indictment in this case, viz: the unlawful killing of Allen J. Yokum. The different counts in the indictment merely charge the offense in the different degrees to meet the evidence."

In *Bohanan v. State, supra*, the *Baldwin* case is cited with approval and adhered to. In *Anderson v. State*, 26 Neb. 387, 41 N. W. 951, the court said: "The finding as to the higher degree merely applies to the atrocity of the crime; a verdict in either degree is for murder. But it may be said that the jury having found that the crime was premeditated, and that therefore the punishment should be death, that the court cannot review this finding and render a new judgment based upon the evidence. * * * If, therefore, the jury find a party guilty of a grade of murder higher than is warranted by the evidence, the court, while sustaining the conviction of murder, may reduce the grade to conform to the proof. The whole theory of our criminal law is that punishment shall be based upon the degree of guilt proved, and that no severer penalty shall be imposed than is warranted by the evidence. Hence this court is given power to review the evidence, and is required to see that the punishment is not in excess of that justified thereby. * * * In the case under consideration, as the proof fails to show premeditation and deliberation of the plaintiff in error before he committed the crime, but does show that he purposely and maliciously committed the same, he is not guilty of murder in the first degree and should not suffer death. It is our duty, therefore, to reduce the sentence, in accordance with the statute, to imprisonment in the penitentiary during his life; and the sentence is so modified." The only basis for the foregoing decision is that a criminal homicide is but one offense and that the determination of the degree goes to the

punishment. Otherwise this court could not possibly have the power to consider the evidence and reduce the degree of the crime to conform thereto.

In *Singh v. State,* 35 Ariz. 432, at p. 448, 280 Pac. 672, at p. 677, the court in considering this same question said: "It is the most atrocious murders that are classed as of the first degree and the least atrocious of the second degree, but both degrees are just grades of the same high crime—both consist in 'the unlawful killing of a human being with malice aforethought.'" In *State v. Phillips,* 118 Ia. 660, 92 N. W. 876, the court stated the same principle in the following language: "There is, under our law, but one crime called murder. The so-called degrees of this offense do not constitute distinct crimes, but gradations of the same crime, devised for the purpose of permitting punishment to be varied according to the circumstances of greater or less enormity characterizing the criminal act." In *State v. Gunn,* 89 Mont. 453, 300 Pac. 212, the rule was stated as follows: "'Murder is the unlawful killing of a human being with malice aforethought.' (Sec. 10953, Rev. Codes 1921.) There is but one crime of murder, and its division into degrees is simply for the purpose of adjusting the punishment with reference to the presence or absence of circumstances of aggravation. * * * While it is true the statute requires the jury to determine the degree of murder (sec. 12022, Rev. Codes 1921), this is done for the purpose of having the jury take into consideration the distinguishing features of the two degrees, so that the punishment may be fixed with reference to the elements of the particular degree."

We are convinced that the correct rule is that sections 28-401, 28-402 and 28-403, R. S. 1943, defining murder in the first degree, murder in the second degree and manslaughter, construed with section 29-2027, R. S. 1943, define the degrees of the crime of criminal homicide, a single offense. The unlawful killing constitutes the principal fact and the condition of the mind or attendant circumstances determine the degree or grade of the offense, and when the greater of the degrees has been committed, the lesser de-

grees have also been committed, they being necessarily involved as a constituent part of the higher crime. Consequently, a conviction of murder in the second degree, or manslaughter, could legally be sustained, although the evidence made out a case of murder in the first degree.

This leads us to the conclusion that the order entered during the first trial sustaining the motion for a directed verdict and dismissing the charges of murder in the first degree and in the second degree was not a final judgment operating as an acquittal or discharge of the defendant on those charges. There are many reasons why this is so. In the first place, when the jury disagrees there is no verdict determining the primary element of the crime, whether or not there was an unlawful killing. Until there has been a final determination of the crime charged, there is no verdict which can be pleaded as a prior conviction or acquittal. *People v. Bain,* 279 Ill. 206, 116 N. E. 615. In the last case cited the court said: "The rule of law that where a defendant is indicted for an offense and on trial is convicted of a lesser offense also included in the charge in the indictment the verdict of the jury must be held to be an acquittal of the defendant as to the greater offense charged in the indictment cannot be applied in this case, or in any other case in which there is no conviction of a lesser offense charged and in which the verdict of the jury does not amount to a finding of guilty or of not guilty as to any charge contained in the indictment." We think the foregoing principle has application to the case at bar.

This is further illustrated in cases where there has been a conviction, an appeal of the case and a reversal. This court has held that the case goes back for retrial on the highest degree charged, even though his previous conviction was on a lesser degree. *Bohanan v. State, supra; Clarence v. State,* 89 Neb. 762, 132 N. W. 395; *Pembrook v. State,* 119 Neb. 417, 229 N. W. 271. But in those cases a verdict of guilty was returned which, if not appealed from, would constitute a bar to another prosecution for any of the degrees of which he was or could have been convicted under

the information on which he was tried. But when the defendant appeals in such a case claiming error, he waives or abandons his right to plead the conviction as a bar.

In the present case the jury never arrived at a verdict. There was nothing which the defendant at any stage of the proceedings could have pleaded as a previous conviction or acquittal. It is urged, however, that the action of the trial judge in dismissing the charge of first and second degree murder amounted to an acquittal of those degrees. There is no merit in this argument. *State v. Shuchardt*, 18 Neb. 454, 25 N. W. 722. In the first place there is but one offense charged and there can be but one verdict. A finding of guilt and a fixing of the degree thereof is the only proper verdict that can be returned, other than that of acquittal. Such a verdict, if it be less than first degree, in effect determines that the evidence was insufficient to sustain a finding of guilt on a higher degree. " 'There can be no legal determination of the character of the malice of a defendant in respect to a homicide which he is not found to have committed, or rather, of which, under his plea, he is in law presumed to be innocent.' ". *Bohanan v. State, supra.* A verdict upon a charge containing lesser degrees of the offense or on separate counts for the same offense, must be an entirety which lays the foundation for a single judgment. It is only where an information charges separate and distinct offenses in separate counts, or where a part of several defendants are acquitted, that the verdict need not be an entirety.

It is contended, however, that the trial court is bound to submit to the jury only such degrees of the crime as find support in the evidence. While this is a correct statement of the law, it lends no support to the contention here advanced. Instructing a jury that murder in the first degree and murder in the second degree have been withdrawn from their consideration because of an insufficiency of the evidence to support them is far different from an attempt to dismiss a part of a single offense, or to direct a verdict of acquittal on one or more degrees of a single offense. A trial

court has no such power and his attempt to so do will be construed merely as a withdrawal of that issue from the jury for the reason that the evidence then before the court would not warrant the submission of those degrees to the jury. *Montgomery v. State,* 136 Wis. 119, 116 N. W. 876. But when the jury disagrees and a second trial is required, the case must be tried in the same manner as if the former trial had not been had.

It is then urged that if this be true the defendant would be placed in jeopardy a second time. The general rule is that when a person has been placed on trial on a valid information or indictment before a court of competent jurisdiction, has been arraigned and his plea entered, and a jury has been impaneled and sworn, he has been placed in jeopardy. But when the jury fails to agree on a verdict for any of the reasons stated in section 29-2023, R. S. 1943, the whole proceeding is nullified and nothing remains which can benefit the defendant. See *Shaffer v. State,* 123 Neb. 121, 242 N. W. 364; *Sutter v. State,* 105 Neb. 144, 179 N. W. 414; 22 C. J. S., sec. 260, p. 398. The discharge of the jury under such circumstances is without prejudice to the prosecution under the aforesaid statute. See *Gragg v. State,* 112 Neb. 732, 201 N. W. 338. We conclude that the provisions of the Nebraska Constitution inhibiting against double jeopardy have not been violated.

It is urged that such procedure is violative of the due process provisions of the Fourteenth Amendment to the Constitution of the United States. This question has been decided contrary to the contention of defendant. In *Palko v. Connecticut,* 302 U. S. 319, 58 S. Ct. 149, it appears that defendant was indicted for murder in the first degree, found guilty of murder in the second degree, and sentenced to imprisonment for life. The state appealed pursuant to a statute authorizing appeals by the state on all questions of law in criminal cases. The judgment was reversed by the supreme court of Connecticut and a new trial ordered for errors of law. On the second trial defendant's objection that the effect of the trial was to place him twice in jeopardy for

the same offense was overruled, and he was found guilty of murder in the first degree and sentenced to death. On appeal to the Supreme Court of the United States it was held that the statute of Connecticut authorizing appeals by the state was constitutional because the due process clause of the Fourteenth Amendment to the United States Constitution does not protect a defendant against double jeopardy in a prosecution by a state. We necessarily conclude that the procedure contended for by the state and herein approved by this court is not violative of the due process provisions of the Fourteenth Amendment to the United States Constitution or of similar provisions of our state Constitution.

We are of the opinion that the order of the trial judge in the first trial dismissing the charges of murder in the first degree and murder in the second degree should be construed as nothing more than a withdrawal of those degrees of the crime of homicide from the consideration of the jury because of an insufficiency of the evidence to support them. Such action does not operate as an acquittal or discharge of the defendant of any offense, but operates only as a matter of instruction to the jury as in any other case where the evidence is found insufficient as a matter of law to sustain a finding of the existence of a pleaded fact.

We conclude also that the trial and trial proceedings placed the defendant in jeopardy on the charge of first degree murder and all the lesser degrees of the crime contained therein. When the jury disagreed, however, the proceedings were completely nullified and a plea of former jeopardy was not available at the second trial. *Montgomery v. State, supra.*

We conclude likewise that the trial judge at the second trial erred in sustaining the plea in bar as to first and second degree murder. These questions should have been submitted again at the second trial provided the evidence was sufficient to go to the jury on those questions. All three questions posed by defendant in error must therefore be answered in the negative.

The right of the attorney general to bring the case to this court on exceptions is challenged. The statute, section 29-2314, R. S. 1943, recites in part: "The county attorney may present to the Supreme Court any bill of exceptions taken under the provisions of this code," no mention being made of the attorney general therein. However, it is provided by section 84-204, R. S. 1943: "The Attorney General and the Department of Justice shall have the same powers and prerogatives in each of the several counties of the state as the county attorneys have in their respective counties." It seems to us that this latter section authorizes the attorney general to do anything in connection with the instant case which the county attorney for Douglas county could do. He is authorized therefore to prosecute exceptions to this court as provided for in section 29-2314, R. S. 1943.

EXCEPTIONS SUSTAINED.