566 P.2d 1146

**STATE of New Mexico, Petitioner,**

v.

**Lalo CASTRILLO, Respondent.**

**No. 11239.**

Supreme Court of New Mexico.

July 8, 1977.

---

**610**

Toney Anaya, Atty. Gen., Don Montoya, Asst. Atty. Gen., Santa Fe, for petitioner.

Pickard & Singleton, Lynn Pickard, Santa Fe, for respondent.

## OPINION

PAYNE, Justice.

The defendant was tried to a jury on a charge of murder in the first degree. Lesser included offenses of second-degree murder and voluntary manslaughter were also submitted for the jury's consideration. At the conclusion of the trial and after deliberation by the jury, the foreman announced that the jurors were deadlocked and unable to reach a verdict. The defendant was tried a second time and found guilty of murder in the second degree. He appealed from that judgment and the Court of Appeals reversed the conviction, holding that the defendant had twice been put in jeopardy and should therefore be discharged. We granted certiorari not only to review that issue but because the Court of Appeals treated additional issues and gave an advisory opinion on matters that were outside the scope of appellate review.

Prior to the second trial, defendant moved to dismiss the charges against him on the grounds of double jeopardy, claiming that the first jury had unanimously voted for acquittal on the charges of first and second-degree murder. An affidavit of the foreman of the jury was offered to support the defendant's contention. The trial court denied the motion, relying upon *Biebelle v. Norero*, 85 N.M. 182, 510 P.2d 506 (1973) and *State v. Brooks*, 59 N.M. 130, 279 P.2d 1048 (1955).

Defendant argues that where a mistrial has been declared without a conviction or acquittal there is no verdict and that Rule 606(b)[1] of the Rules of Evidence allows the introduction of the affidavit as evidence. We do not agree.

New Mexico has consistently held that it is improper to allow juror affidavits or other evidence tending to impeach, impugn or vitiate the jury's decisions. *Biebelle v. Norero*, supra. The affidavit of the foreman of the jury was properly disregarded by the trial court.

In *State v. Brooks*, supra, the jury had deliberated on a murder charge for a period of time and concluded that it was unable to reach a verdict. The defendant then requested that the court poll the jurors as to conviction or acquittal on the included offenses of a murder charge. The trial court refused the request and on appeal this court held:

> While the parties to either criminal or civil cases have a right to poll the jury to ascertain whether the verdict rendered is the verdict of the individual juror, a request to have the jury polled before the

---

1. Section 20–4–606(b), N.M.S.A.1953 (Supp. 1975).

verdict is rendered is premature and should be denied. (Citations omitted.) 59 N.M. at 133, 279 P.2d at 1050.

The holding in *Brooks* will no longer be applicable in New Mexico. Henceforth, when a jury announces its inability to reach a verdict in cases involving included offenses, the trial court will be required to submit verdict forms to the jury to determine if it has unanimously voted for acquittal on any of the included offenses. The jury may then be polled with regard to any verdict thus returned.

Within the framework of the Uniform Criminal Jury Instructions a jury may reach one of three different results as to each included offense. It may unanimously find a defendant guilty of a greater offense, it may unanimously vote to acquit on the greater offense, or it may fail to reach agreement. If the vote is not unanimous or if the vote is unanimous for acquittal, it must then move to a consideration of the lesser offenses. N.M.U.J.I.Crim. 50.01 and 50.12 [2d Repl.Vol. 6, N.M.S.A.1953 (Supp. 1975), at 335, 338]. Either an acquittal or a conviction of a lesser included offense bars further prosecution for the greater offense. *State v. Tanton*, 88 N.M. 333, 540 P.2d 813 (1975); *State v. Goodson*, 54 N.M. 184, 217 P.2d 262 (1950); *State v. Medina*, 87 N.M. 394, 534 P.2d 486 (Ct.App.1975).

If charges are presented to a jury as separate or alternative counts rather than included offenses, Rule 44(c) of the Rules of Criminal Procedure [§ 41–23–44(c), N.M.S.A.1953 (Supp.1975)] allows retrial only for counts upon which the jury cannot agree. The rule states.

If there are two [2] or more counts, the jury may at any time during its deliberations return a verdict or verdicts with respect to a count or counts upon which it has agreed. If the jury cannot. agree with respect to all counts, the defendants may be tried again upon the counts on which the jury could not agree.

Retrial is thus precluded for counts upon which the jury reached unanimous agreement and returned a verdict. *Ex parte Williams*, 58 N.M. 37, 265 P.2d 359 (1954).

The same result should also obtain if a jury has voted unanimously for acquittal on any of several included offenses. The procedure, however, must be different when charges are presented as lesser-included offenses rather than separate counts. A trial court should not accept an announcement as to the jury vote on any included offense until the jury has carried its deliberations as far as possible. Jeopardy should then attach to those offenses upon which the jury has unanimously agreed to acquit, even if it is unable to reach a final verdict as to any lesser included offenses.

We are aware that our holding in this case is not only contrary to *State v. Brooks,* supra, but is also a departure from the approach taken in other jurisdictions. *Walters v. State,* 255 Ark. 904, 503 S.W.2d 895, cert. denied, 419 U.S. 833, 95 S.Ct. 59, 42 L.Ed.2d 59 (1974); *People v. Griffin,* 66 Cal.2d 459, 58 Cal.Rptr. 107, 426 P.2d 507 (1967); *People v. Doolittle,* 23 Cal.App.3d 14, 99 Cal.Rptr. 810 (1972); *People v. Hall,* 25 Ill.App.3d 992, 324 N.E.2d 50 (1975); *State v. Hutter,* 145 Neb. 798, 18 N.W.2d 203 (1945). In *People v. Griffin,* supra, a recent case that is frequently relied upon, the Supreme Court of California said:

We first consider defendant's contention that his third trial placed him twice in jeopardy of first degree murder. . . The jury at the second trial was discharged after failing to reach a unanimous verdict, and a mistrial was declared. * * * After the jury was discharged, the foreman disclosed in open court that the jurors had stood 10 for acquittal and 2 for guilty of second degree murder. * * * Defendant contends that this fact establishes an implied acquittal of first degree murder.

This contention must be rejected. . . We may not infer from the foreman's statement that the jury had unanimously agreed to acquit of first degree murder. There is no reliable basis in fact for such an implication, for the jurors had not completed their deliberations and those voting for second degree murder may have been temporarily compromising in an effort to reach unanimity.

66 Cal.2d at 464, 58 Cal.Rptr. at 109–10, 426 P.2d at 509–10.

The California Court raised the question of when a jury vote can be considered final and opted to deny recognition to any jury action not returned in a final verdict. It recognized that as a practical matter juries may not follow an undeviating procedure of voting on included offenses starting with the greater and moving to the lesser. It did not want to preclude a jury from reconsidering a previous vote on any issue.

■ We agree that the approach taken by a jury in reaching a decision should not be called into question. We agree with the policy that discourages, and in most instances prohibits, any inquiry or intrusion into the jury room. We do not feel, however, that allowing inquiry as to the jury vote on greater-included offenses would violate that policy.

■ The reluctance of courts to allow consideration of a jury's determination on any included offenses until the jury has reached a final verdict on the total package of charges is based upon additional factors. One factor is the interest of the State in retrying a defendant on the total case rather than a limited portion. If prosecutors are unsuccessful in a first trial, they hope to use that experience as a dress rehearsal for a better presentation of evidence in the second trial. It could also be argued that fairness is a two-edged sword that requires an aborted trial to be retried from the first with neither side given an advantage. The doctrine of double jeopardy, however, recognizes that the State has the burden of proof, and once a defendant has been put in jeopardy the State cannot retry that issue.

■ The historical development of the trial of homicide cases is another basis for the failure of some states to accept the approach we now adopt. Under the early common law there were no degrees of murder or manslaughter. In dividing these crimes into degrees, legislatures recognized that homicide could not be so easily categorized. Some are less aggravated and merit less punishment, while others must be treated more severely. In *State v. Hutter,*

supra, the Nebraska Court, following the historical approach said:

> The unlawful killing constitutes the principal fact and the condition of the mind or attendant circumstances determine the degree or grade of the offense, and when the greater of the degrees has been committed, the lesser degrees have also been committed, they being necessarily involved as a constituent part of the higher crime. * * *
>
> * * * [W]hen the jury disagrees there is no verdict determining the primary element of the crime, whether or not there was an unlawful killing. Until there has been a final determination of the crime charged, there is no verdict which can be pleaded as a prior conviction or acquittal.

145 Neb. at 804–05, 18 N.W.2d at 208. The fallacy of this logic if applied to New Mexico, is that even if the fact of homicide is conceded, the statutory scheme of homicide prohibits convictions on the greater offenses unless additional elements are also present. § 40A–2–1, N.M.S.A.1953 (2d Repl.Vol. 6, 1972). A jury that has unanimously concluded that there is a failure of proof on any necessary element is bound to acquit.

■ The theories behind the arguments that are contrary to our present approach have not remained inviolate. In order to protect the right to appeal, a defendant convicted of a lesser offense overturned on appeal may not be retried for any greater offense. A defendant would not always pursue valid grounds for appeal after conviction of a lesser charge if he knew he would face the possibility of a trial on greater charges after reversal. *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). We hold that the purpose and policies supporting the double jeopardy restrictions are equally as valid. That rationale is ably set forth by the Court of Appeals in *State v. De Baca,* 88 N.M. 454, 541 P.2d 634, cert. denied, 89 N.M. 6, 546 P.2d 71 (1975).

A mistrial not moved for or consented to by the defendant must be based upon a manifest necessity or jeopardy attaches preventing retrial. *Green v. United States,* supra. The power to declare a mistrial must be exercised with the greatest caution, under urgent circumstances, and for very plain and obvious reasons. *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). There is no plain and obvious reason to declare a mistrial as to any included offense upon which the jury has reached a unanimous agreement of acquittal.

In the present case the declaration of the mistrial came after the following exchange between the trial court and the foreman of the jury:

THE COURT: Mr. Fenner, you wish to speak to the Court?

MR. FENNER: Yes, sir, your honor, we are deadlocked.

THE COURT: All right, sir. You have been at your work just about eleven or twelve hours, since we have submitted the case to you, including the times you have had for meals. Do you think to this point, Mr. Fenner, there is no real purpose in continuing with deliberations in the case?

MR. FENNER: Yes, sir. By polling the Jury in the Jury Room, they are of the opinion that there would be no—

THE COURT: No chance?

MR. FENNER: No chance, no change to be expected, no sir.

THE COURT: All right, thank you. I suspect it is always a little disappointing to the Jury not to be able to resolve on the Jury in a case, after the time and efforts that you have invested in it. We, of course, like to have a verdict, if possible to do so. We don't undertake to resort to any sort of coercion amongst the Jury to bring that about. I am going to declare a mis-trial in the case, and discharge the Jury. I would like to know, Mr. Fenner, questions which I don't ask except when I am breaking the Jury out, because before that time, I don't consider it any of my business. What is your numerical stand? What is your division?

MR. FENNER: Nine to three.

THE COURT: Nine to three. Are you at a level of acquittal on voting?

MR. FENNER: Yes, sir, we have a level of acquittal.

THE COURT: In other words, how do you stand, how many for acquittal, to your nine to three?

MR. FENNER: Nine.

THE COURT: Nine for acquittal and three for some degree of conviction?

MR. FENNER: Yes, sir.

A manifest necessity for the declaration of a mistrial is shown since the jury could not agree to at least one of the included offenses within the murder charge. The record is silent upon which, if any, of the specific included offenses the jury had agreed and upon which the jury had reached an impasse. The record is clear, however, that the jury did not acquit the defendant on all offenses. The holding in *State v. Spillmon,* 89 N.M. 406, 553 P.2d 686 (1976), dictates a dismissal upon double jeopardy grounds as to such offenses on which the record is unclear. In that case, this court held:

> Since the record does not disclose a "manifest necessity" for the discharge of the jury and a final termination of the trial, we follow the suggestion of the United States Supreme Court in *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), and resolve any doubt in favor of the liberty of the citizen. We hold that under the facts in this case jeopardy has attached and the defendants may not be tried again on the murder charge.

89 N.M. at 408, 553 P.2d at 688.

The principle set forth in *Spillmon,* supra, is applicable under the circumstances of this case since the record is not clear as to which of the included offenses the jury was considering at the time of its discharge. Without inquiry by the trial court into the jury's deliberations on the greater, included offenses, no necessity is manifest to declare a mistrial as to those offenses and thus jeop-

ardy has attached. Jeopardy did not attach to the offense of voluntary manslaughter which was the least of the included offenses. Had the jury reached a unanimous decision on that offense it could not have been in the posture it announced to the court.

The Court of Appeals erred in concluding that jeopardy had attached to all of the included offenses. Jeopardy had not attached to the charge of voluntary manslaughter. The conviction of the defendant of second-degree murder is reversed and the case is remanded for retrial on the charge of voluntary manslaughter.

IT IS SO ORDERED

McMANUS, C. J., and SOSA and EASLEY, JJ., concur.